United States Court of Appeals,

Fifth Circuit.

No. 93-9112.

Michael Lee THOMAS, Plaintiff-Appellant,

v.

LTV CORPORATION, Defendant-Appellee.

Dec. 13, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, DeMOSS and BENAVIDES, Circuit Judges:

BENAVIDES, Circuit Judge:

Michael Lee Thomas ("Thomas") appeals the district court's summary judgment in favor of LTV Corporation. The district court concluded that section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141-87, preempted Thomas' various state law claims.

This case primarily involves two issues: (1) whether Thomas' individual attendance probation agreement is treated in the same manner as a collective-bargaining agreement, for purposes of preemption under section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141-87 ("LMRA"); and (2) whether Thomas' claim for wrongful discharge under Tex. Labor Code § 451.001 (formerly Tex.Rev.Civ.Stat.Ann. art. 8307c) is preempted under the LMRA. Given the facts of this particular case, we answer both questions affirmatively, and we affirm the district court's judgment.

*I. Facts*

From 1984 to 1991, Thomas was employed by LTV in Dallas, Texas. For most of that time, Thomas was a member of the United

Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 848 ("UAW" or "Union"), which maintained a collective-bargaining agreement ("CBA") with LTV. The CBA contained the terms and conditions of employment for Thomas and other employees similarly situated, and it also contained grievance and arbitration procedures relating to disciplinary actions taken against UAW members and the interpretation and application of the agreement. For the UAW, its members, and LTV, these provisions were binding.

Thomas had a history of absenteeism for which he received written warnings in 1989 and 1990. At a subsequent meeting attended by his union steward, an LTV supervisor, and the LTV labor-relations representative, Thomas was presented with an attendance probation agreement ("APA"). His continued employment was conditioned upon acceptance of the APA, setting forth minimum attendance requirements for one year. Under the APA, Thomas agreed that any unexcused absences would result in his immediate discharge and that his total number of absences could not exceed four percent of his scheduled work days within any three-month period. The APA also provided that if Thomas failed to meet these requirements, he would be discharged without benefit of any grievance or arbitration procedures set forth in the CBA. Thomas, the union steward, and both LTV representatives signed the APA in their respective capacities.

On January 4, 1991, Thomas suffered an on-the-job injury requiring medical treatment. Thomas was unable to work until his

physician released him in April 1991. During this time, Thomas applied for and received workers' compensation benefits under LTV's compensation policy. After determining that Thomas' absences during this period exceeded the minimum attendance requirements under the APA, LTV fired Thomas on March 7, 1991.

Thomas filed a grievance through the UAW, contending that his discharge was improper because the absences caused by his work-related injuries should not have been included in calculating whether the four-percent maximum was exceeded. Under the CBA's grievance procedures, applicable when the grievance involves the termination of a union member, other officers of the local and international union participated.

On September 17, 1991, LTV and UAW officials presented Thomas with a second attendance probation agreement which he refused to sign because it waived any right he might have to sue LTV based on the original APA. Thomas made no further efforts to pursue his claim under the terms of the CBA.

*II. Procedural History*

In December 1992, Thomas sued LTV in Texas state court, alleging: (1) breach of contract; (2) estoppel; (3) intentional and negligent infliction of emotional distress; and (4) wrongful discharge under Texas Labor Code § 451.001. Each claim arose from LTV's conduct as it related to the events surrounding Thomas' dismissal in March 1991. LTV removed the case to federal court on the basis of federal question jurisdiction, claiming that Thomas' state law claims were preempted by section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185.

In July 1993, LTV filed a motion for summary judgment on all of Thomas' claims, arguing that they were preempted by section 301 of the LMRA, that they were barred by a six-month statute of limitations, and that Thomas failed to exhaust the grievance procedures provided for under the CBA. Thomas' response included a motion to remand the claims to state court. He asserted that the district court lacked subject-matter jurisdiction and denied that section 301 preempted his claims.

With the exception of Thomas' wrongful discharge claim, the district court dismissed all of Thomas' state tort and contract claims, finding them preempted by section 301 and barred by the LMRA's six-month statute of limitations. The district court initially concluded, however, that Thomas' wrongful discharge claim under Texas Labor Code § 451.001 neither required a construction of the CBA nor implicated rights created by the CBA; therefore, this claim was remanded to state court.

On October 22, 1993, LTV filed a Motion to Alter or Amend the Judgment requesting that the district court reconsider its determination that the wrongful discharge claim was not preempted by section 301. LTV argued that section 301 preempted the wrongful discharge claim based on Thomas' deposition testimony that the basis for his wrongful discharge claim was the interpretation and application of the attendance probation agreement. On October 27, 1993, the district court granted LTV's motion and dismissed Thomas' wrongful discharge claim, concluding that this claim was based upon

4

the APA and, therefore, preempted by section 301.

### III. Jurisdiction

Thomas asserts that the district court lost jurisdiction to reconsider its order remanding Thomas' wrongful discharge claim to state court. This claim was initially remanded as a matter of discretion under the authority of 28 U.S.C. § 1367(c), which states in relevant part:

> The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of state law;
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction....

Discretionary remand orders under this provision are neither based upon a lack of subject-matter jurisdiction nor a defect in the removal procedure under 28 U.S.C. § 1447(c). More importantly, discretionary remand orders are not subject to 28 U.S.C. § 1447(d), which provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

As opposed to section 1447(d) remand orders, discretionary remand orders are reviewable either by the district court or on appeal. *See In re Digicon Marine, Inc.,* 966 F.2d 158, 160 (5th Cir.1992).

With regard to the district court's ability to reconsider its earlier remand order, the remand order is treated like any other

5

final judgment. Generally, a district court retains jurisdiction until the time for filing an appeal has expired or until a valid notice of appeal is filed. When a timely Rule 59(e) motion has been filed, the district court retains jurisdiction for thirty days after ruling on the motion. Here, LTV's Rule 59(e) motion to reconsider or amend was filed four days after the remand order. The district court granted the motion five days later, clearly within its jurisdiction. *See id.* at 160-61. The district court retained jurisdiction to vacate its remand order; likewise, this Court has jurisdiction to hear this appeal. *See In re Shell Oil Co.,* 932 F.2d 1523, 1528 (5th Cir.), *reh'g denied,* 940 F.2d 1532 (5th Cir.1991).

## IV. Standard of Review

A district court's ruling on a motion for summary judgment is reviewed *de novo. Federal Deposit Ins. Corp. v. Laguarta,* 939 F.2d 1231, 1236 (5th Cir.1991); *see also Baker v. Farmers Elec. Coop., Inc.,* 34 F.3d 274, 278 (5th Cir.1994) (preemption questions are reviewed *de novo* ). A motion for summary judgment is properly granted when competent evidence establishes the absence of a genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A defendant moving for summary judgment must affirmatively demonstrate that there is no genuine issue of material fact concerning each element of the plaintiff's claims for relief. *Id.* An issue is "material" if it involves a fact that might affect the

outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court is required to resolve all doubts and draw all reasonable inferences in favor of the non-movant and determine whether the movant is entitled to judgment as a matter of law. *Wells v. General Motors Corp.,* 881 F.2d 166, 169 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990).

## *V. Section 301 Preemption*

Thomas contends that the district court erred in concluding that his state law claims were preempted by section 301. Section 301 of the LMRA provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union. *Landry v. Cooper/T. Smith Stevedoring Co., Inc.,* 880 F.2d 846, 850 (5th Cir.1989). Section 301 of the LMRA provides, in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Incompatible doctrines of state law must give way to federal labor law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102-03, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The preemptive effect of section 301 applies to causes of action arising in both contract and tort. *United Steelworkers v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990);

7

*Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210-11, 105 S.Ct. 1904, 1910-11, 85 L.Ed.2d 206 (1985).

Preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement. *See Lingle v. Norge Div., Magic Chef, Inc.,* 486 U.S. 399, 406-07, 108 S.Ct. 1877, 1881-82, 100 L.Ed.2d 410 (1988); *Allis-Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. The U.S. Supreme Court has held:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle,* 486 U.S. at 405-06, 108 S.Ct. at 1881. Prior to *Lingle,* the U.S. Supreme Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be either treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1915 (citations omitted). Equally well-recognized, however, is the principle that claims only tangentially involving provisions of collective-bargaining agreements are not preempted by section 301. *Lingle,* 486 U.S. at 409-11, 108 S.Ct. at 1883-84.

*A. The Attendance Probation Agreement*

To determine the preemptive effect of section 301, we must

first decide whether Thomas' individual attendance probation agreement is treated in the same manner as a collective-bargaining agreement. Thomas characterizes the APA as an employment contract independent of the CBA the UAW maintained with LTV. The APA allegedly superseded any contrary provisions in the CBA and governed the conditions of Thomas' continued employment. According to the terms of the APA, Thomas would not be discharged if, upon returning to work, he presented a written "verifiable, excusable reason." The APA further stated that a termination resulting from a violation of the agreement would be considered "final" and "without recourse to the grievance and arbitration procedure" provided by the CBA. Although the APA did not define what reasons would be "excusable," Thomas testified that, on the day the APA was presented, LTV labor-relations representative Frank Antonelli specified that personal holidays and vacation days would "not count" toward calculating the four-percent maximum. Antonelli also stated that although sick days supported by a "viable doctor's excuse" would be considered "excused," they would count toward the calculation. This provision was amplified in a conversation Thomas had with Antonelli on the day of his on-the-job accident. Antonelli assured Thomas that time lost from work as a result of the work-related injury would *not* be considered when determining whether Thomas was meeting the attendance requirements of the APA. From this, Thomas asserts that the agreement defines terms particular only to him as a stand-alone contract, only tangentially relating to the CBA.

To the contrary, LTV portrays the APA as an exercise of its management responsibilities and functions, as described in the CBA. When preparing to discipline a union member for excessive absenteeism, LTV approached the union steward and drafted the agreement for that employee's acceptance or rejection. LTV asserts that this APA was not an independent or superseding contract, arguing that it was part and parcel of the CBA because all parties were adequately represented and their rights under the CBA were protected. LTV contends that any dispute regarding the application or meaning of the terms of the APA compels a direct reference to the CBA and, thus, enters the scope of section 301 preemption.

In *Eitmann v. New Orleans Public Serv., Inc.,* 730 F.2d 359 (5th Cir.1984), this Court held that a union employee's claim for breach of a separate individual employment contract would be analyzed for LMRA preemption purposes just as a collective-bargaining agreement would be. *Id.* at 364. In that case, the employee contended that he was advised, at the time of his hiring, that a lineman suffering work-related injuries would receive full compensation during periods of disability and, if necessary, until retirement. At all times during his employment, however, Eitmann was a member of a union which maintained a collective-bargaining agreement with his employer. The CBA provided for mandatory grievance procedures which were begun by Eitmann, but later abandoned. Eitmann brought suit for breach of contract, grounded on his individual contract with his employer. This Court held that the two agreements could not be construed so

10

independently of each other, as to avoid preemption. While individual contracts between employer and employee are not precluded by the existence of a collective-bargaining agreement, to the extent that an individual contract and a collective-bargaining agreement are inconsistent, the latter must prevail. *Id.* at 362 (citing *J.I. Case v. NLRB,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944)). This "inconsistency" requirement is satisfied if the separate agreement clearly seeks to "limit or condition" the terms of the collective-bargaining agreement, which establishes the terms and conditions of employment, including discharge and grievance procedures. *Id.* at 363.

Even accepting Thomas' argument that the APA is "independent" of the CBA, it nonetheless seeks to "limit or condition" the terms of Thomas' employment which is addressed by the CBA. Thus, under the authority of *Eitmann,* the APA is subject to a preemption analysis just as if it was a CBA.[1]

In addition, we believe that the APA at issue here technically qualifies as a CBA because it is a collectively-bargained instrument, manifesting a disciplinary action taken by LTV for Thomas' poor work attendance. Collective bargaining has been defined as bargaining by an organization or group of workmen on behalf of its members with the employer, as well as the settlement

_____

[1]At least one other circuit has held that an independent agreement of employment is treated as a CBA for preemption purposes because the independent agreement can only be effective as part of the larger collective-bargaining agreement. *See Stallcop v. Kaiser Foundation Hosp.,* 820 F.2d 1044, 1048 (9th Cir.1987) (an oral agreement made in connection with the employee's reinstatement).

11

of disputes by negotiation between an employer and the representative of his employees. *See United Constr. Workers v. Haislip Baking Co.,* 223 F.2d 872, 877 (4th Cir.), *cert. denied,* 350 U.S. 847, 76 S.Ct. 87, 100 L.Ed. 754 (1955). A collective-bargaining agreement is an effort to set forth a whole system of "industrial self-government." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). As described by the U.S. Supreme Court:

> Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises, and plans.
>
> . . . . .
>
> The grievance procedure is, in other words, a part of the continuing collective bargaining process.

*Warrior & Gulf Navigation Co.,* 363 U.S. at 580-81, 80 S.Ct. at 1351-52.

Here, the APA is a manifestation of a disciplinary action by LTV for an employee's poor work attendance. The UAW, through its union steward, was aware of this disciplinary proceeding and participated in the presentation of the APA to Thomas. The summary judgment proof supports LTV's assertion that the APA was presented to Thomas by LTV personnel and the union steward for acceptance or rejection, without his further input or negotiation. Thomas' continued employment was conditioned upon his acceptance. When agreeing to the attendance requirements as a condition to his continued employment, Thomas also waived grievance or arbitration

12

proceedings related to his attendance, which would presumably otherwise apply under the CBA. The CBA identifies LTV's continuing authority to discipline or discharge employees for just cause or for failure to work, and it also identifies procedures by which union members may seek redress for any potential abuse of LTV's authority. While the summary judgment proof does not detail the extent of the union steward's involvement in the actual drafting of the APA, it is undisputed that it was negotiated and entered into by LTV, the UAW, and Thomas. We conclude that this document may be properly described as a collectively-bargained instrument and should be analyzed for preemption purposes just as if it was a CBA.

*B. Breach of Contract and Estoppel*

Thomas asserted that the APA was breached by LTV's termination of him for absences resulting from his on-the-job injury, specifically pointing to a disagreement over the interpretation of the APA with regard to how LTV should apply his time missed when calculating the four-percent maximum. Thomas also alluded to the provision of the CBA relating to terminations for "just cause." Thomas claims that representations by LTV's labor-relations representative concerning the effect of the injury-related absences toward the APA induced his reliance or continued absence from work during his recuperation. Thomas claims that LTV should be estopped from disavowing these representations.

As Thomas concedes, to resolve his claims for breach of contract and estoppel, a determination of how the APA applies days missed from an on-the-job injury is required. Consequently,

13

resolution of these claims are substantially dependent upon an analysis of the terms of the APA, a collectively-bargained instrument, and are preempted by section 301.

*C. Intentional and Negligent Infliction of Emotional Distress*

Thomas also contends that the district court erred in holding that his state law claims for intentional and negligent infliction of emotional distress are preempted by section 301. He claims that LTV's "extreme and outrageous conduct" in the handling of the disciplinary matters amount to negligent or intentional infliction of emotional distress. Thomas claims that these causes of action do not require an interpretation of the CBA and are only tangentially related to the APA.

In *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250 (5th Cir.1990), an employee was told by his personal physician that he was completely disabled and should not return to work. Southwestern Bell, however, informed the employee that if he did not return to work by a certain date, he would be terminated. The employee brought a claim for intentional infliction of emotional distress based on the fact that Southwestern Bell forced him to chose between his job and his physician's advice. This Court held that the essence of the employee's claim was that his absence from work under his physician's orders did not constitute a just cause for discharge under the CBA. Consequently, his claim required an interpretation of the CBA and was held to be preempted by section 301.

Likewise, in *Burgos v. Southwestern Bell,* 20 F.3d 633 (5th

14

Cir.1994), the employee's family brought an action for intentional infliction of emotional distress based on Southwestern Bell's treatment of the employee, despite its knowledge of his heart condition. We held that to determine whether Southwestern Bell acted wrongfully in the way it transferred the employee from one section to another, required him to take different tests, and ultimately terminated him, an analysis of Southwestern Bell's obligations under the collective-bargaining agreement was necessary. *Burgos,* 20 F.3d at 636 (citing *Brown* and *McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531 (4th Cir.1991) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992) (section 301 preempted employee's intentional and negligent infliction of emotional distress claims)). Because an analysis of the collective-bargaining agreement was required, the emotional distress claim was held to be preempted by section 301. *Burgos,* 20 F.3d at 636.

Just as we recognized in *Burgos,* the employee has the burden of proving wrongful conduct by the employer. Thomas must demonstrate that LTV's conduct was wrongful under the circumstances. To determine whether LTV's conduct was wrongful under the circumstances, an analysis of the collective-bargaining agreement is necessary. Thus, section 301 preempts Thomas' claims of intentional and negligent infliction of emotional distress.

*D. The Wrongful Discharge Claim*

Thomas argues that the district court erred in finding that his wrongful discharge claim under Texas Labor Code § 451.001 was

preempted by section 301. LTV presented Thomas' deposition testimony to support its motion for summary judgment. In his deposition, Thomas repeatedly testified that the basis for his wrongful discharge claim was the interpretation and application of the APA. As we have already discussed, Thomas' state law claims are preempted by section 301 if the claims depend on the meaning of his APA.

In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988), the Supreme Court held that application of state law is preempted by the LMRA only if such application depends upon the meaning of a CBA. There, as here, the plaintiff's allegations concerned retaliatory discharge, a claim requiring proof that (1) the plaintiff was discharged or threatened with discharge, and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights.

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for section 301 preemption purposes.

*Lingle,* 486 U.S. at 408, 108 S.Ct. at 1883. More recently, in a Railway Labor Act case, the Supreme Court explicitly adopted the identical preemption analysis as that used for the LMRA. In *Hawaiian Airlines, Inc. v. Norris,* a discharged airline mechanic brought a state court action, alleging violations of public policy

and the Hawaii whistleblower act. The Court contrasted the employee's claim with one that was preempted because it was "firmly rooted in a breach of the CBA itself." Specifically, the Court stated:

> Here, in contrast, the CBA is not the "only source" of respondent's right not to be discharged wrongfully. In fact, the "only source" of the right respondent asserts in this action is state tort law. Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistleblowing.

*Hawaiian Airlines, Inc. v. Norris,* --- U.S. ----, ----, 114 S.Ct. 2239, 2246, 129 L.Ed.2d 203 (1994). The Supreme Court also recently held that an employee's action based upon a state-law right to receive a penalty payment from her employer was not preempted under the LMRA even though the penalty was tacked to her wages, which were determined by a governing CBA. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* --- U.S. ----, ----, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (citing *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12).

Under Tex. Labor Code § 451.001, the plaintiff in a wrongful discharge case is required to show that the filing of a workers' compensation claim was a reason for his discharge. *See Azar Nut Co. v. Caille,* 720 S.W.2d 685 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987). It is not incumbent upon the plaintiff to prove that the filing of the claim was the sole cause for his

17

dismissal. *See Trevino v. Corrections Corp. of Am.,* 850 S.W.2d 806, 808 (Tex.App.—El Paso 1993, writ denied); *General Elec. Co. v. Kunze,* 747 S.W.2d 826 (Tex.App.—Waco 1987, writ denied). Nonetheless, the plaintiff must produce some credible evidence of the employer's retaliatory motive. *Texas Division-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312 (Tex.1994) (per curiam).

In our circuit, two cases are critical to the resolution of this issue: *Medrano v. Excel Corp.,* 985 F.2d 230 (5th Cir.1993) and *Jones v. Roadway Express, Inc.,* 931 F.2d 1086 ("*Roadway Express I* "), *reh'g denied,* 936 F.2d 789 (5th Cir.1991) ("*Roadway Express II* "). In *Roadway Express,* the employer claimed that, at deposition, the employee "explicitly state[d] that the basis for his Article 8307c claim expressly involves a misinterpretation of a provision of the collective bargaining agreement...." To the contrary, this Court stated:

> We did not find such an explicit statement. The testimony cited by Roadway refers to the provisions in the CBA which Roadway claims justify Jones' dismissal. As our original opinion explained, however, Roadway may have fired Jones for employment reasons which the CBA justified. But if it also fired him in anticipation of his filing a workers' compensation claim, Jones can recover damages.

*Roadway Express II,* 936 F.2d at 791 (citations omitted).

In *Medrano,* the employee argued throughout trial that the provision of the CBA itself constituted discrimination in violation of former article 8307c. Consequently, this Court held that the claim was preempted because "[the employee] actually drew on the settlement provision of the CBA itself to establish a violation of article 8307c...." *Medrano,* 985 F.2d at 233. Further, the

18

employee alleged that by applying this specific provision of the CBA, the employer discriminated against him for *settling* a workers' compensation claim, not for *filing* one. *Id.*

Recently, this Court followed *Roadway Express,* distinguishing *Medrano:*

> While the [Roadway Express] court noted that "either party may still use the CBA to support the credibility of its claims," such reliance does not show that an interpretation of the CBA is necessary to resolve [the plaintiff's] claim. In other words, although [the defendant] may defend against [the plaintiff's] article 8307c claim by arguing that its actions were justified by the CBA ... such reliance does not necessarily transform [the plaintiff's] article 8307c claim into a claim that requires an interpretation of the CBA.

*Anderson v. American Airlines, Inc.,* 2 F.3d 590, 596 (5th Cir.1993) (citations omitted). Nonetheless, our decision in *Anderson* provides no succor to Thomas in this case. Thomas repeatedly and explicitly stated during his deposition that the basis for his wrongful discharge claim was the interpretation of the four-percent provision contained in the APA; although given the opportunity, Thomas never claimed any other basis for his claim. Neither during oral argument nor in his brief was counsel for Thomas able to direct this Court to any testimony or other summary judgment proof creating a fact issue or otherwise contradicting Thomas' statements made during his deposition. Consequently, we find this case controlled by *Medrano* because, here, we have the explicit statements found lacking in *Roadway Express.* Section 301 preempts Thomas' claim for wrongful discharge.

## VI. Statute of Limitations

Thomas maintains that the district court erred in applying

19

the six-month statute of limitations applicable to "hybrid" section 301 claims because he never sued the UAW. Thomas asserts that his claims, even if preempted, were incorrectly dismissed because he commenced his action within the appropriate Texas limitations' periods.

The U.S. Supreme Court has defined "hybrid" suits, as follows:

> [H]ybrid suits formally comprise two causes of action. First, the employee alleges that the employer violated [section 301] by breaching the collective-bargaining agreement. Second, the employee claims that the union breached its duty of fair representation, which the Court has implied from the scheme of the NLRA, by mishandling the ensuing grievance-and-arbitration proceedings.

*Reed v. United Transp. Union,* 488 U.S. 319, 328, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989); *see also DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) (the two claims are inextricably interdependent). If the employee so chooses, they may sue one defendant and not the other, but the case to be proved is the same whether one or both are sued. *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291. However, if the arbitration-and-grievance proceeding is the exclusive remedy for breach of the CBA, the employee may not sue his employer under section 301 until completion of the proceeding. *Daigle v. Gulf States Utilities Co., Local 2286,* 794 F.2d 974, 977 (5th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986). The "indispensable predicate" for a section 301 action against an employer, based on a violation of a collective-bargaining agreement, is the union's

20

breach of its duty of fair representation.  *Id.*  The applicable statute of limitations for these "hybrid" section 301 claims is six months, as may be found in section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b).  *Id.*

Thomas' assertion that his claims are not hybrid in nature ignores the fact that his claims are based upon the alleged breach of the APA, not to mention the undisputed fact that he initially submitted his complaints about the application of the APA through the grievance procedures provided under the CBA.  According to the CBA, these grievance procedures were final and binding on LTV, the UAW, and Thomas.  Consequently, Thomas' grievance about the APA was a mandatory prerequisite to suit.[2]  Thomas did not exhaust this remedy.

In addition, under the rule of *DelCostello,* Thomas was bound by the results of the grievance proceeding unless he could prove that LTV violated the contract and that the UAW failed to represent him fairly.  Here, it is undisputed that after Thomas filed his grievance, representatives of LTV and the UAW negotiated a settlement permitting Thomas to return to work, subject to a second APA.  Thomas, however, rejected this settlement in favor of filing suit, a step prohibited under *DelCostello* unless there was some breach of fair representation by the UAW.  Consequently, the only federal claims that Thomas could assert against LTV based on the

---

[2]In the context of section 301, federal law ordinarily requires the employee to complete his grievance proceeding before filing suit.  *Parham v. Carrier Corp.,* 9 F.3d 383, 390 (5th Cir.1993).

21

interpretation and application of the APA were hybrid section 301/fair representation claims, regardless of whether or not the UAW was joined as a party.

Thomas did not file suit until twenty-one months after the termination of his grievance proceeding. All of his claims were barred by the applicable six-month statute of limitations. The district court's summary judgment is **AFFIRMED** in all respects.