**Ronald E. BUTSCHEK, Plaintiff,**

**v.**

**SOUTHWESTERN BELL TELEPHONE CO., Communications Workers of America Local 6222, and Communications Workers of America, AFL–CIO, Defendants.**

**Civil Action No. H–95–0686.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 8, 1996.

breached their duty of fair representation, and that his employer violated the collective bargaining agreement in effect between the parties. Defendants Southwestern Bell Telephone Co. ("SWBT"), Communication Workers of America Local 6222 ("Local 6222"), and Communication Workers of America, AFL–CIO ("CWA") each have filed a motion for summary judgment. The Court has considered the motions, the responses and replies, all other matters of record in this case, and the relevant authorities. For the reasons stated herein, Defendants' motions are granted. In particular,

- the **Motion for Summary Judgment on Behalf of Defendant Communications Workers of America** [Doc. # 25] ("CWA Motion") is **GRANTED;**
- the **Motion for Summary Judgment of Defendant Communications Workers of America, Local 6222** [Doc. # 27] ("Local 6222 Motion") is **GRANTED;**
- **Defendant Southwestern Bell Telephone Company's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof** [Doc. # 28] ("SWBT Motion") is **GRANTED;** and
- **Plaintiff Butschek's Motion for Leave to File First Amended Complaint** [Doc. # 46] is **DENIED.**

### FACTUAL BACKGROUND

Plaintiff has been employed at SWBT since 1970, and as a SWBT service technician from 1973 until 1993. Declaration of Ronald E. Butschek (Exhibit 1 to Plaintiff Butschek's Conditional Memorandum in Opposition to Defendants' Motions for Summary Judgment [Doc. # 31] ("Plaintiff's Response")) ("Plaintiff's Declaration"), at 1. Plaintiff is part of a collective bargaining unit for which CWA is the lawful exclusive representative of the employees for purposes of collective bargaining over wages, hours, and other terms and conditions of employment. Affidavit of Ben G. Turn, Assistant to the Vice President for District 6 of CWA (Exhibit to CWA Motion) ("Turn Affidavit"), ¶ 4, at 2. As a Houston employee, Plaintiff is represented by Local 6222 of the Communications Workers of America. *Id.* ¶ 4, at 3.

David T. Lopez, David Lopez & Associates, Houston, TX, for Ronald E. Butschek.

Wilka Varela Cacho, S.W. Bell, Bellaire, TX, David Huntt Baker, Houston, TX, for Southwestern Bell Telephone Company.

Robert Wilson Rickard, Swearingen Clark & Moore, Houston, TX, David Van Os, Van Os White & Vasquez, Austin, TX, for Communication Worker, S of America Local 6222.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Ronald E. Butschek ("Plaintiff" or "Butschek") has brought this action alleging violations of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by both his employer and his union. Plaintiff alleges that the national and local unions

## A. *The Driver's License Review Policy and Its 1991 Revisions*

Plaintiff claims that he first became aware of the SWBT Driver's License Review Policy when he was shown the original policy in 1989. Plaintiff's Declaration, at 1. The policy was revised in 1991, effective April 1992, so as to provide that "[a]ny employee with an unsatisfactory driving record will not be permitted to drive on Company business unless specifically approved by an Officer of the Company, as provided in Section 9." Driving Record Review (Exhibit 1 to Affidavit of Donna Geisler, Division Manager, SWBT's Labor Relations Group (Exhibit C to SWBT Motion) ("Geisler Affidavit")), at 4. Section 9 provides that employees with unsatisfactory driving records are to be removed from driving jobs unless the employee has a valid driver's license and there are "compelling extenuating circumstances." *Id.* at 5.

The 1991 revisions made the policy significantly stricter than the original 1989 policy, which had provided that an unsatisfactory driving record "may lead to counseling, initial taking or repetition of Defensice [sic] Driving Training, some degree of discipline, or transfer to a non-driving job if one is available." Arbitration Award Re: Demotion of Theresa Wallace (Exhibit 3 to Geisler Affidavit) ("Wallace Arbitration Award"), at 9. CWA reviewed the 1991 revisions, and although it concluded that the revisions did not *per se* violate the collective bargaining agreement, it did "reserve[ ] the right to file grievances over [SWBT's] application of [the revised policy] to individual employees whenever it might deem it meritorious to do so." CWA Motion, at 3; Turn Affidavit, ¶ 5, at 3.

Defendants have produced a form, entitled Driver's License Review Policy, which discloses the following revisions to the policy:

When a Driving Record Review is made, none of the conditions listed below may appear on the employees [sic] record during the 36 months prior to the date of the review. *If any of the conditions below exist the employee will have an unsatisfactory driving record review and be removed from a driving position.*

. . . .

3. Conviction of, guilty plea, or a plea of no-contest to a charge of Driving While Intoxicated (DWI), or Driving Under The Influence (DUI) of alcohol or drugs . . .

. . . .

An employee with an unsatisfactory driving record will not be permitted to drive on company business unless specifically approved by an officer of the agency.

An unsatisfactory driving record will disqualify applicants/employees for jobs that require regular drivers.

Driver's License Review Policy (Exhibit 14 to Deposition of Ronald E. Butschek (Exhibit to CWA Motion) ("Plaintiff's Deposition")) (emphasis in original), at 1. The form states that it is to be signed by those "covered on," or apprised of, the revised policy, so as to show that the employee has been "covered." It bears signatures of both Plaintiff and his supervisor, Tom LaFosse, and is dated March 13, 1992.

## B. *Plaintiff's Guilty Plea to DWI and Removal From Driving Position*

On April 11, 1993, Plaintiff was charged with driving while intoxicated ("DWI") while off-duty. On the instructions of the union, he reported the charge to his supervisor, LaFosse, immediately. Plaintiff states that LaFosse told him that he would be removed from his driving job if convicted, and that he would have 90 days to find another job within the company or be terminated. Plaintiff's Declaration, at 2; Plaintiff's Deposition, at 81.[1] Plaintiff pleaded guilty to the DWI charge on or about December 13, 1993, paid a fine of $200, and was granted probation. Plaintiff's Deposition, at 9–10; *see also* Exhibits 3 and 4 to Plaintiff's Deposition.

It is Defendants' position that Plaintiff was removed from his driving job because his DWI conviction rendered his driving record unsatisfactory under the policy. Moreover, Plaintiff signed the form announcing the policy revision, and stated in his deposition that

---

1. Plaintiff was a customer services technician at the time of his guilty plea, which involved driving

of a company vehicle as a regular duty. Geisler Affidavit, ¶ 6, at 2; Plaintiff's Deposition, at 13.

he read this form before signing it. Plaintiff's Deposition, at 24–25, 30.

However, Plaintiff states that, before he was disciplined for his DWI conviction, he "never believed anyone would be removed from his job for a conviction of driving under the influence," Plaintiff's Declaration, at 2, and that he "was never told that the company would start to police a previously unenforced policy." Plaintiff's Response, at 11. He insists that the policy revisions were not "explained to [him] in that manner" by LaFosse, SWBT, the union, or anyone else. Plaintiff's Declaration, at 2. Plaintiff's declaration states that he knew of other individuals who had received DWI convictions and had not been removed from driving jobs, although he does not identify such persons. *Id.*

Plaintiff also states that LaFosse initially stated that he did not believe that removal from a driving job was actually the policy for DWI convictions, and that "if it was, that it was a stupid policy." *Id.* LaFosse, referring to the revised policy, allegedly told his crew members, " 'Guys, this thing's been around for years,' " therefore apparently indicating that there were no significant changes. *Id.* In Plaintiff's Supplement to His Opposition to Defendants' Motions for Summary Judgment [Doc. # 45] ("Plaintiff's Supplement"), at 1–2, he presents evidence that Plaintiff's crew was "not covered on the [policy] as thoroughly as was claimed" by LaFosse and that LaFosse only "covered" the policy with the crew in May 1993, *after* Plaintiff had been charged with DWI. Plaintiff has also presented evidence supporting his argument that, contrary to LaFosse's position, the crew members did express surprise at Plaintiff's punishment and that even LaFosse himself expressed disbelief at the punishment. *Id.* at 2. Plaintiff states that crew members altered their social behavior because of what happened to him, and that, "if [he] would have been made aware of the extent of the punishment to which he would be subjected by SWBT, he would have altered his behavior." *Id.* at 3. CWA takes issue with Plaintiff's characterization of the

evidence. Defendant CWA's Supplement to Its Motion for Summary Judgment [Doc. # 50] ("CWA Supplement").

## C. *The March 20, 1992, Letter*

Plaintiff alleges that the union was aware of a policy—in particular, a letter issued on March 20, 1992—of which Plaintiff had no knowledge, which revised the previous policy by stating that if a driving employee received three tickets or a DWI, the employee would be removed from the driving job "without question," with "no chances" and "no lenience." Plaintiff's Deposition, at 29.[2] The March 20 letter, written by the vice president for network distribution services and directed to several division managers for distribution services, instructs each of the recipients to "see that this [revised policy] is covered prior to implementation with the CWA Local officers with whom each of you interface." Letter of March 20, 1992 (Attachment A to Plaintiff's Declaration). The March 20 letter discusses Operating Practice 28, Review Package No. 16, which is the same policy discussed in the form signed by Plaintiff on March 13. Indeed, like the form signed by Plaintiff, the letter discusses removal from driving positions for unsatisfactory driving records, the rarity of exceptions, and placement in nondriving positions within 90 days.

Defendants argue that this March 20 letter simply was an advisory to supervisors reminding them to "cover" their employees on the new policy and that, as evidenced by the March 13 form, LaFosse had already complied with the instruction as to Plaintiff. Plaintiff, however, insists that the March 20 letter, which he first saw after his arrest, was the "first indication he had received that the company was going to enforce the driver's license review policy." Plaintiff's Response, at 9; Plaintiff's Declaration, at 2. He alleges that LaFosse admitted that he had not "covered" the employees on the contents of the letter, that LaFosse apologized for not having done so, and that he did not receive the second page of the letter and had not seen it

**2.** Plaintiff states that he received a copy of this letter from Dwight Sweatt, a supervisor at the Galveston Road Work Center. Plaintiff's Declaration, at 3.

until after Plaintiff's arrest.[3] He claims that members of Ron Collum's work crew, including David Hartwell, Larry Hall, and Mike Sweeney, "expressed shock at [the letter's] contents" when Plaintiff showed it to them, and that they had not been "covered" on it. Plaintiff's Declaration, at 3. Plaintiff also alleges that LaFosse, after apologizing to Plaintiff for not having "covered" the letter, read and explained the policy to the entire crew. Plaintiff's Declaration, at 4.[4]

Defendants argue that the form Plaintiff signed on March 13, 1992, contained the same relevant information as the March 20 letter, since the form signed by Plaintiff had stated unequivocally that a DWI conviction could lead to removal from a driving job. Furthermore, Defendants point out that the March 20 letter established no criteria different from those in the form signed by Plaintiff, and that CWA did not interpret the March 20 letter as a new policy. CWA Motion, at 9–10. Although the March 20 letter arguably might have placed a new emphasis on a provision allowing for termination if an employee convicted of DWI was not placed in a non-driving job within 90 days, Defendants argue that this is irrelevant to the case at bar since Plaintiff did receive a non-driving job and was not terminated.

## D. *Plaintiff's Grievance and Request for Arbitration*

Plaintiff filed a grievance when he learned that he would be removed from his position.

LaFosse denied his grievance at the first level. Plaintiff's Declaration, at 4. Management also denied his grievance. *Id.*[5] At the next grievance stage, when Plaintiff was represented by the local union, his grievance was again denied. Plaintiff states that, although he had been informed by union representative Ernest Ybarra that the union would obtain statements from Plaintiff's fellow crew members testifying that they were not "covered" with the policy change, Ybarra never did so. Plaintiff also states that Madelene Robertson, who represented him at the hearing, did not mention the March 20 letter and presented no witnesses, but instead "spent her time trying to get [Plaintiff] a temporary job at the company's Knight Road facility." Plaintiff's Declaration, at 5. At the final grievance level, when Plaintiff was represented by Edie Jones and Madelene Robertson, the hearing "lasted about five minutes," and Quince Washington, the SWBT representative, stated that SWBT had already prevailed on this issue in arbitration. Plaintiff states that Jones nodded in agreement and that neither Jones nor Robertson made a statement on his behalf. Plaintiff's Declaration, at 5. Despite his signature on the March 13, form, Plaintiff alleges that, if the union had conducted more of an investigation, it "would have learned that its members were not made aware of the change in company policy." Plaintiff's Supplement, at 4.

Plaintiff's petition to the union for arbitration of his grievance was reviewed by CWA

**3.** Plaintiff's Response, at 7–8. Plaintiff states that he later showed the March 20 letter to LaFosse, who stated that he had never seen the letter. Plaintiff's Declaration, at 3. Later that afternoon, LaFosse told Plaintiff that he had "messed up," and that he had received a copy of the letter a year before, but had received only the first page. LaFosse had called his boss but was told "not to worry about it," and then "stuck the letter in his desk and forgot about it." Plaintiff's Declaration, at 4.

**4.** Plaintiff directs the Court's attention to two handwritten notes on the March 20 letter, both apparently written by Madelene Robertson, the union official representing Plaintiff during his grievance. The first states, "Edie, when Ron was covered on Policy this letter was never covered. When this letter was looked for by his supervisor, this page was not included—Madelene." The second states, "Never covered with Ron But-

schek or his crew—b4 his DWI." Letter of March 20, 1992 (Attachment A to Plaintiff's Declaration).

**5.** Plaintiff appears to argue that the discipline imposed upon him was improper based on a technicality. In particular, despite Plaintiff's admission that he was arrested for and pleaded guilty to DWI, he now argues that management had not produced a driving record actually showing his DWI offense. Plaintiff's Declaration, at 4 (Plaintiff told management that they were attempting to punish [him] without producing a driving record which showed a conviction. The record the company obtained was clean. *See also* Plaintiff's Response, at 14 ("at the time that the discipline was imposed, there was absolutely no support under the contract provisions, since Mr. Butschek's record did not show any conviction for driving while under the influence").

Representative Andy Milburn and was denied. CWA screens cases for relative merit, and generally does not arbitrate grievances when it concludes that there is no reasonable chance of prevailing before an arbitrator. Affidavit of Andy Milburn (Exhibit to CWA Motion) ("Milburn Affidavit"), ¶ 8, at 3; Turn Affidavit, ¶ 6, at 3–4; Affidavit of Albert S. Bowles (Exhibit to CWA Motion) ("Bowles Affidavit"), ¶¶ 4–6, at 2. Milburn, who had significant experience handling grievances and arbitration, Milburn Affidavit, ¶¶ 5–6, 8, concluded as follows:

> The revised Policy was a valid condition of employment, [Plaintiff] personally signed an acknowledgment of the Policy in the presence of his supervisor, [Plaintiff] admitted the fact of the DWI conviction, and the Policy clearly stated that the DWI gave the Company the right to remove him from his driving job. In my experience arbitrators normally uphold Company action against an employee when the action is based upon the employee clearly violating a valid Company policy of which the employee is on notice. Furthermore, the Company gave [Plaintiff] an extended period of time to find a non-driving job so that he would be able to retain his employment with the Company.... I did not necessarily agree with the Company's action toward [Plaintiff], but I knew that there

was no realistic chance an Arbitrator would rule in his favor. I thus recommended to my superiors in District 6 of the national CWA that [Plaintiff's] case not be arbitrated.

*Id.* ¶ 10, at 4–5. Milburn's immediate supervisor, District 6 Southern Area Director Albert S. Bowles, reviewed the file and Milburn's recommendation, and also recommended against arbitration. Bowles Affidavit, ¶¶ 4–6, at 2.[6] Bowles' superior, Ben G. Turn, was in agreement that arbitration should not be pursued since "the Company's policy is so clear on this point that arbitration would in all probability be a fruitless exercise." Turn Affidavit, ¶ 6, at 3–4.[7]

Plaintiff argues that the union's unfairness is demonstrated by the fact that, at the same approximate time, the union chose to arbitrate a case involving similar facts on behalf of Teresa Wallace.[8] Plaintiff states that the union's arguments in the Wallace case relied upon evidence of inconsistent application of the policy, but that the union did not present this evidence on behalf of Plaintiff. Plaintiff's Response, at 12. However, Milburn's affidavit explains that he recommended arbitration of the Wallace case because he believed that the its facts were sympathetic and therefore provided a "worthy case to test the Driving Record Review Policy before an ar-

6. In a memorandum dated October 7, 1994, Bowles stated, "The Arbitration Review Panel has reviewed the above captioned grievance and has concluded that we could not sustain our position before an Arbitrator. This grievant's case is marred by a long list of mishaps. The DWI just put the finishing touches on a bad safety and accident record. I don't see any way to persuade an arbitrator the Company did not have just cause. For the reasons discussed, the request for arbitration is denied." Exhibit 19 to CWA Motion; *see also* Bowles Affidavit, ¶¶ 2, 4–5, at 1–2.

> Plaintiff argues that it was improper for his driving record to have been relied upon by Bowles since the incidents on his record were all more than 36 months old. Plaintiff's Response, at 13. This is irrelevant, however, since only one DWI conviction was necessary to render an employee's record unsatisfactory under the revised policy.

7. Turn further explained that arbitration and grievance meetings are quite different, and thus so are the motivations for pursuing them:

> In a grievance meeting there is no neutral party serving in an adjudicative function and there are no trial-type procedures; a grievance meeting is more a matter of negotiating interests than deciding rights. An arbitration, on the other hand, is an adversary trial-type proceeding presided over by a neutral who adjudicates contractual rights ... The arbitrator makes evidentiary rulings, resolves credibility of witnesses, finds facts, and issues a written opinion which determines contractual rights. In order for the Union to prevail the arbitrator must find that the Company has violated specific contractual rights.

Turn Affidavit, ¶ 7, at 4. *See also* Milburn Affidavit, ¶ 8, at 3 (it is irresponsible to use the arbitration process for futile cases, especially since each arbitration award becomes arbitration case law of the particular bargaining unit).

8. In other cases similar to Plaintiff's, the Union has not arbitrated. Wallace's case was the lone exception. Milburn Affidavit, ¶¶ 11–12, at 5; Bowles Affidavit, ¶ 7, at 2–3; Turn Affidavit, ¶ 8, at 4.

bitrator." Milburn Affidavit, ¶ 11, at 5. Ultimately, the arbitrator ruled against the union in Wallace's case, upholding the policy and thereby confirming the union's judgment that there had been no realistic chance of prevailing in Plaintiff's case had it been arbitrated. *Id.* ¶¶ 11–12, at 5.

### E. *Subsequent Developments*

SWBT changed its driver's license policy in 1994, shortening the time period for driver's license review from 36 months to 24 months. Turn Affidavit, ¶ 11, at 5. The change in the policy was advocated by CWA, whose District 6 Vice President sent a letter to SWBT on September 13, 1993, requesting the policy be revised for the benefit of long term employees. *See* Exhibit 21 to Turn Affidavit.

After being removed from his driving position, Plaintiff passed the exam to be an SWBT operator. He was employed as an operator for two years,[9] with a rate of pay that was half of that for service technicians. Plaintiff states that this caused him extreme financial hardship, and that the stress and strain of the grievance procedures took a heavy emotional toll on him. Plaintiff's Declaration, at 6. Because of the new policy shortening the requisite time period for a clean record from 36 to 24 months, and because Butschek kept a clean driving record from December 1993 to December 1995, Plaintiff was returned to his driving job. His full rate of pay will be restored in January 1997. *Id.*

### *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

(1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (en banc); *Little,* 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56

---

**9.** Plaintiff was given the benefit of the 1994 revisions to the policy in that he was allowed to return to his previous position after 24 months, rather than 36. Nevertheless, Plaintiff complains that he was not given the benefit of a provision allowing for one-time waivers of off-duty DWI offenses. Plaintiff's Response, at 15.

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

## *DISCUSSION*

Plaintiff brings a "hybrid" suit against both the union and his employer, pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

> Hybrid suits formally comprise two causes of action. First, the employee alleges that the employer violated [section 301] by breaching the collective-bargaining agreement. Second, the employee claims that the union breached its duty of fair representation, which the Court has implied from the scheme of the [National Labor Relations Act] by mishandling the ensuing grievance-and-arbitration proceedings.

*Thomas v. LTV Corp.,* 39 F.3d 611, 621 (5th Cir.1994) (quoting *Reed v. United Transp. Union,* 488 U.S. 319, 328, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989)) (internal quotation marks omitted). The claims against the employer and the union are "inextricably interdependent," and the union's breach of its duty of fair representation is an "indispensable predicate" for a Section 301 action against an employer based upon violation of a CBA. *Id.* at 621–22; *Gutierrez v. United Foods, Inc.,* 11 F.3d 556, 559 n. 8 (5th Cir.), *cert. denied,* 511 U.S. 1142, 114 S.Ct. 2164, 128 L.Ed.2d 887 (1994). Therefore, Plaintiff first must establish that CWA and/or Local 6222 breached their duty of fair representation if he is to prevail ultimately on his claim that SWBT breached the CBA.[10]

### A. *Breach of Duty of Fair Representation by CWA and Local 6222*

Plaintiff alleges that Local 6222 breached its duty of fair representation because it failed to consider or investigate Plaintiff's grievance despite the fact that the local union's file demonstrated that Plaintiff did not have notice of the policy change, and because it did not consider his claims of inconsistent discipline. Plaintiff's Response, at 2–3, 11–12. As for the national union, Plaintiff alleges that CWA breached its duty of fair representation because it "failed to adopt and acquiesced in the perfunctory handling of the grievance by the Local Union and denied arbitration of [Plaintiff's] grievance without any consideration of the merits." *Id.* at 3.

CWA and Local 6222 argue that they did all that they reasonably could for Plaintiff, given that the Company had a valid policy clearly providing for the discipline imposed on Plaintiff, and that Plaintiff had been "covered" on the precise policy and its ramifications on March 13, 1992. CWA handles grievances on a two-tier system, with the national union assuming direct responsibility at the top levels and therefore having the responsibility for determining whether or not a case should be submitted to arbitration, while the local unions handle grievances at local levels. Affidavit of B.J. Etzel (attached to Local 6222's Motion) ("Etzel Affidavit"), ¶ 3, at 2. Local 6222 processed Plaintiff's grievance to each level of the grievance procedure over which it had control, including asking the national union to submit Plaintiff's case to arbitration. *Id.* ¶ 5, at 2–3. The national union, as discussed previously, concluded that there was no reasonable chance of prevailing on Plaintiff's claim in arbitration, and therefore denied the request.

A union breaches its duty of fair representation "by acting in a 'discriminatory, dishonest, arbitrary, or perfunctory manner.'" *Gutierrez,* 11 F.3d at 559 n. 8 (citing *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983)). The union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). A union

---

**10.** "Hybrid" actions are governed by a six-month statute of limitations. *See, e.g., Thomas,* 39 F.3d at 621. The parties have not raised this argument and the Court does not address it.

does not breach its duty of fair representation through "simple negligence" or a "mistake in judgment." *Landry v. The Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir.1989) (citing *Vaca v. Sipes*, 386 U.S. 171, 192–93, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 (1967)). Furthermore, a union does not breach its duty "when its conduct in processing an employee's grievance [is] 'less than enthusiastic' and 'not perfect.'" *Id.* (citing *Connally v. Transcon Lines*, 583 F.2d 199, 202–03 (5th Cir.1978)). The Court's substantive review of the union's decision is highly deferential, comparable to judicial review of legislative decisions. *Air Line Pilots*, 499 U.S. at 78, 111 S.Ct. at 1135–36.

■ Given that Plaintiff signed the form which plainly stated that pleading guilty to DWI would render an employee ineligible for a driving position, it is untenable for Plaintiff now to argue that Local 6222 and CWA's handling of his case was "so far outside a 'wide range of reasonableness' ... as to be irrational." *See Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. at 1130. An employee has no absolute right to have his grievance taken to arbitration or any other level of the grievance process. *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989).[11] Although Plaintiff argues repeatedly that he was not on notice that SWBT "would start to police a previously unenforced policy," and that such notice is required before discipline under the policy is permitted, *see, e.g.*, Plaintiff's Response, at 4–5, 11, this argument is frivolous in light of Plaintiff's signature on the form apprising him of policy revisions on March 13. Under longstanding rules of contract law, a person who intentionally signs a document is bound by its contents, absent fraud or mental incompetence. *Donovan v. Mercer*, 747 F.2d 304, 308 n. 4 (5th Cir.1984). This is true whether or not the signing person actually read the document. *Id.* Plaintiff is bound by the contents of the document he signed on

March 13, and whether or not he or his fellow crew members took the document's contents to heart is not dispositive of the legal issues before the Court.

Furthermore, despite Plaintiff's argument that union officials such as Ybarra, Robertson, and Jones knew that he had not seen the March 20 letter, this complaint is irrelevant since the March 20 letter contained no relevant information of which Plaintiff had not already received notice through the form he signed on March 13.

The Court holds that, as a matter of law, CWA and Local 6222 did not breach their duty of fair representation to Plaintiff.

**B. *Breach of the Collective Bargaining Agreement by SWBT***

■ Since Plaintiff has not prevailed in his fair representation claims against the union, his claims against SWBT must also fail. *See Thomas*, 39 F.3d at 621–22 (union's breach of its duty of fair representation is an "indispensable predicate" for a Section 301 action against an employer based upon violation of a CBA). Therefore, summary judgment is appropriate in favor of SWBT.

In addition, the Court notes that Defendants have presented affidavits stating that the revised policy in fact did not violate the CBA agreement and that, consequently, the union was not able to prevent SWBT from implementing the policy. Milburn Affidavit, ¶ 9, at 3; Turn Affidavit, ¶ 5, at 3. Plaintiff has not responded meaningfully to this evidence, but merely continues to assert that he was not given notice of the revised policy, and that SWBT therefore violated the collective bargaining agreement ("CBA") because it "imposed an extreme penalty on [Plaintiff] despite knowing he was not aware of the policy and its revisions." Plaintiff's Response, at 4 (citing labor arbitration awards). The Court has previously rejected this argument, based on Plaintiff's March 13 signature

---

**11.** The Court is unpersuaded by Plaintiff's argument that the Wallace case listed other examples of failure to apply the policy uniformly, but that this information was not applied to prosecution of his grievance. The union's decision to take Wallace's case to arbitration was not discriminatory or arbitrary, but reasoned and logical. *See*

Milburn Affidavit, ¶¶ 11–12, at 5. Furthermore, the Wallace Arbitration Award confirmed the Union's belief that arbitrating Plaintiff's case would have been fruitless. *Compare Stanley v. General Foods Corp.*, 508 F.2d 274 (5th Cir.1975) (union has right to conclude would be fruitless and decline to arbitrate).

on the form apprising him of the revisions to the policy.[12] Plaintiff's arguments do not rise above the level of conclusory allegations and unsubstantiated assertions, and therefore are insufficient to defeat summary judgment. *Douglass*, 65 F.3d at 459; *Little*, 37 F.3d at 1075.

### C. *Motion for Leave to Amend Complaint*

█ Plaintiff seeks leave to file a First Amended Complaint. CWA and SWBT both oppose this relief. *See* Doc. # 48, 49.

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "lies within the sound discretion of the district court." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir.1993). In deciding whether to grant leave to file an amended pleading, the district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm*, 3 F.3d at 139 (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)) (leave to amend denied because of bad faith and dilatory motive).

Plaintiff here fails to explain the need for the amendment. Defendant CWA contends that the proposed pleading (1) raises issues known to be irrelevant; (2) makes assertions that Plaintiff and counsel know to be "directly contrary to the facts developed in discovery"; (3) continues to raise claims that Plaintiff and his counsel know to be "either frivolous or false"; and "it is filed too late in this action, after motions for summary judgment have been timely filed, the court has heard oral argument, and the parties have

already taken the two additional depositions that Plaintiff claimed would save him from summary judgment." *See* Doc. # 49.

When a Plaintiff's motion for leave to amend is filed more than a year and a half after the action is commenced, after the close of discovery, and after summary judgment motions have been filed, the motion is too late. A Plaintiff may not alter the nature and focus of the case at this stage. Nor may Plaintiff change his theory of the case after summary judgment motions have been filed. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075–76 (5th Cir.1994) (en banc).

Furthermore, the requested amendment would be futile in light of the above holdings.

Plaintiff's Motion for Leave to Amend is denied.

### CONCLUSION

For the foregoing reasons, it is now

**ORDERED** that the **Motion for Summary Judgment on Behalf of Defendant Communications Workers of America** [Doc. # 25] ("CWA Motion") is **GRANTED**. It is further

**ORDERED** that the **Motion for Summary Judgment of Defendant Communications Workers of America, Local 6222** [Doc. # 27] ("Local 6222 Motion") is **GRANTED**. It is further

**ORDERED** that **Defendant Southwestern Bell Telephone Company's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof** [Doc. # 28] ("SWBT Motion") is **GRANTED**. It is further

**ORDERED** that Plaintiff Butschek's **Motion for Leave to File First Amended Complaint** [Doc. # 46] is **DENIED**.

---

**12.** Plaintiff argues that SWBT violated its own policy by removing Plaintiff from a driving position without first obtaining his driving record and that, at the time the discipline was imposed, "there was absolutely no support under the contract provisions, since [Plaintiff's] record did not show any conviction for driving while under the influence." Plaintiff's Response, at 14; Plaintiff's Declaration, at 4. *See supra* note 5. Al-

though Court need not reach this issue given the holdings above, the Court would be unwilling to conclude that SWBT had violated the CBA based solely on this technicality. Plaintiff had reported his DWI arrest and guilty plea to his supervisor and, furthermore, does not argue in any way that the arrest or guilty plea are now open to challenge.