**C. Richard BROWN and Karen Brown, Plaintiffs–Appellants,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, James G. Bryan, and Keith Dendy, Defendants–Appellees.**

**No. 89–1768.**

United States Court of Appeals, Fifth Circuit.

May 24, 1990.

Rehearing Denied June 22, 1990.

John Judge, Amarillo, Tex., for plaintiffs-appellants.

Diane M. Henson, Graves, Dougherty, Hearon & Moody, Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, WISDOM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

C. Richard Brown, a long-time employee of Southwestern Bell Telephone Company ("Southwestern Bell"), was denied the disability benefits he sought pursuant to the company's employee benefit plan and was terminated when he failed to return to work as directed by his supervisors, James G. Bryan and Keith Dendy. Brown and his wife then filed suit in Texas state court against Southwestern Bell, Bryan, and Dendy, asserting a panoply of tort and contract claims, all arising from the denial of Brown's disability benefits and from his subsequent discharge. Defendants removed the case to federal district court, basing jurisdiction upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187, and successfully moved for summary judgment on each of Brown's claims. Finding no reversible error, we affirm.

## I.

The relevant facts are not in dispute. Brown's twenty-eight-year career with Southwestern Bell ended on September 8, 1987, when he was discharged for failing to return to work from a long absence as directed by Bryan and Dendy. For some time prior to his termination, Brown had suffered from a chronic back condition stemming from an old injury. A series of operations in 1982 and 1983 had failed to remedy Brown's condition, and he frequently missed work complaining of back pain.[1]

By the spring of 1987, Brown's pain allegedly had worsened significantly. He consulted several physicians and eventually was referred to a neurologist, Dr. William Gordon. On June 2, 1987, Gordon performed a myelogram and diagnosed Brown's condition as "post operative lumbar disc disease with chronic sciatica." In a report dated June 6, Gordon informed Southwestern Bell's Benefit Committee[2] that Brown was not disabled and could return to work after recuperating from the myelogram so long as he was not required to perform any "heavy lifting, bending, or prolonged sitting." On June 9, the Benefit Committee authorized the payment of temporary disability benefits to Brown but explained that an additional physician's report would be required should Brown wish to continue receiving payments after June 16.

On June 15, Gordon submitted an additional report to the Benefit Committee, stating that Brown was now completely disabled from any type of employment and was restricted to "no standing, sitting, or lifting." Moreover, the report indicated that Brown's prognosis was poor. In Gordon's words, he anticipated no "improvement in [Brown's] condition that would allow him to ever return to full duty employment. At this time, ... [Brown] is totally and permanently disabled."

---

1. Indeed, Brown admitted at his deposition that he had been rated "unsatisfactory" in attendance for nine of the ten years prior to his termination.

2. Brown was a participant in an ERISA plan operated by Southwestern Bell and was entitled to various medical, hospitalization, disability, and retirement benefits. Southwestern Bell's Benefit Committee reviews claims for benefits and administers the plan.

After receiving the June 15 report, the Benefit Committee referred Brown's file to Dr. Paul Gorsuch, who served as a medical advisor to Southwestern Bell. Puzzled by the marked discrepancy between the June 6 and June 15 reports, Gorsuch asked Gordon to consider the fact that Brown's position as a maintenance administrator[3] required no manual labor and to explain in more detail his reasons for concluding that Brown was totally and permanently disabled from performing that job.

Unsatisfied by Gordon's response, Gorsuch sought a second opinion from another neurologist, Dr. Lloyd Garland. After examining Brown, Garland determined that although he was partially disabled, he nevertheless was capable of performing his job duties. Accordingly, the Benefit Committee denied Brown's request for long-term disability benefits.

Brown returned to his job for a brief period in August but complained that he suffered severe pain while at work. On August 24, Brown did not report to work. A representative from the Communication Workers of America (CWA) informed Dendy that Brown had suffered a relapse and would remain away from work indefinitely on the advice of his doctor. Brown then filed a claim for additional disability benefits, and Gordon submitted a report stating that Brown was completely disabled as a result of severe and constant pain in his back, hips, left leg, and shoulders. Gorsuch informed the Benefit Committee that he disagreed with Gordon's evaluation, and Brown's claim was denied on September 1.[4]

On September 3, Brown's supervisors, Bryan and Dendy, visited him at his home. They informed Brown that the Benefit Committee had denied his claim and that Southwestern Bell regarded his most recent absences as unexcused. In addition, they warned Brown that if he failed to return to work by September 8, he would be discharged. When Brown did not report to work on that date, he was terminated for "job abandonment."

In November 1987, Brown and his wife filed suit in Texas state court against Southwestern Bell, Bryan, and Dendy,[5] alleging, *inter alia*, wrongful termination, wrongful refusal to pay disability benefits, breach of fiduciary duty, negligence, conspiracy, and intentional infliction of emotional distress. The essence of the emotional distress claim was that Southwestern Bell, by informing Brown that he would lose his job if he did not return to work, had put him to a choice "between his doctor and his job." Such a choice, Brown argued, was a dilemma to which "no reasonable person in a civilized society should be subjected," and by requiring him to make it, Southwestern Bell had engaged in "extreme and outrageous conduct."

Southwestern Bell removed the case, asserting that even though Brown's complaint purported to raise only state law claims, it in fact was governed by federal law. Insofar as Brown's claims arose out of the denial of disability benefits, Southwestern Bell maintained, they were governed by ERISA, and insofar as they arose out of his termination, they were governed by the LMRA.[6] Brown did not seek a remand at that time, and the parties proceeded with discovery.

In November 1988, Southwestern Bell moved for summary judgment as to each of Brown's claims, contending that they were preempted by ERISA and the LMRA.[7]

---

**3.** As a maintenance administrator, Brown's primary duties were to receive customers' complaints and service requests over the telephone and to dispatch technicians to handle the necessary repairs. The job did not require any physical exertion, and Brown was permitted either to sit or to stand at his desk while performing his duties.

**4.** Brown subsequently appealed that determination to the company's Claim Review Board, which affirmed the Benefit Committee.

**5.** Except where it is necessary to distinguish them, Southwestern Bell, Bryan, and Dendy,

whose interests are completely aligned in this litigation, are henceforth referred to collectively as Southwestern Bell.

**6.** Brown's job was covered under a 1986 collective bargaining agreement between Southwestern Bell and the CWA. The agreement provided, *inter alia*, that employees could be discharged only for "just cause" and that employer-employee disputes were to be submitted to binding arbitration.

**7.** In addition, Southwestern Bell argued that Brown had failed to exhaust the administrative

Brown responded to the motion by conceding that it should be granted except as to his claim for intentional infliction of emotional distress. That claim, he argued, was not preempted and should be remanded.

In July 1989, the district court denied Brown's motion to remand and entered summary judgment in favor of Southwestern Bell, concluding that the emotional distress claim arose out of the denial of Brown's disability benefits and therefore was preempted by ERISA. On appeal, Brown argues that the emotional distress claim should have been remanded and, in the alternative, that summary judgment on that claim was improper.

## II.

In maintaining that the district court lacked jurisdiction to entertain his emotional distress claim, Brown does not explicitly contest the propriety of the initial removal. Instead, he asserts that his claim for intentional infliction of emotional distress, unlike his other state law causes of action, is saved from federal preemption by the rule announced in *Farmer v. United Bhd. of Carpenters & Joiners of Am.*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). Thus, Brown argues, when the preempted claims were resolved and only the allegedly non-preempted claim remained, federal jurisdiction was extinguished, and the district court was obligated to remand the case.

We address the merits of the preemption issue below. But assuming *arguendo* that Brown's claim for intentional infliction of emotional distress is not preempted, we nevertheless conclude that the district court acted properly in retaining it.

■ When a defendant seeks to remove a case, the question of whether juris-

diction exists is resolved by looking at the complaint at the time the petition for removal is filed. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939). Thus, when there is a subsequent narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is not extinguished. Instead, the decision as to whether to retain the pendent claims lies within the sound discretion of the district court. *See In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied*, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

■ A close look at Brown's complaint reveals that removal was proper. Although Brown initially sought relief under a number of common law theories, the essence of his complaint was that he was discharged without just cause in violation of the collective bargaining agreement and that his claim for ERISA benefits was wrongly denied. It is well settled that both sorts of claims, no matter how characterized by the plaintiff, in fact are "necessarily federal in character by virtue of the clearly manifested intent of Congress." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987).[8] Thus, Brown's complaint arose under federal law and was removable to federal court pursuant to 28 U.S.C. § 1441(b).

■ Having concluded that removal was proper, we now address whether the district court abused its discretion in retaining the intentional infliction of emotional distress claim. In *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988), the Court discussed the considerations that should guide federal courts in deciding whether to retain pendent state claims:

remedies available to him under the collective bargaining agreement. Some months after Brown had filed suit, the CWA filed a grievance on Brown's behalf, asserting that he had been discharged without just cause in violation of that agreement. The grievance was submitted to arbitration in December 1988, and in May 1989 the arbitrator ruled in favor of Southwestern Bell.

8. *See also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (LMRA); *Ramirez v. Inter–Continental Hotels*, 890 F.2d 760 (5th Cir.1989) (ERISA); *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir.1989) (LMRA and ERISA).

... [A] federal court should consider and weigh in each case and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.

In addition, courts should consider whether the plaintiff has "attempted to manipulate the forum" in which his case will be heard "simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case," and should guard against such manipulation by denying motions to remand where appropriate. *Id.* at 357, 108 S.Ct. at 622.

Here, the district court was amply justified in concluding that the balance of factors weighed in favor of retaining jurisdiction over the intentional infliction of emotional distress claim. The court had presided over a year of discovery and was intimately familiar with the facts; a remand thus would have resulted in a waste of scarce judicial resources. In addition, it is apparent that by dropping his admittedly preempted claims and moving for a remand, Brown attempted to engage in precisely the sort of forum manipulation proscribed by *Carnegie-Mellon.* Accordingly, we reject Brown's argument that there is no federal jurisdiction over his emotional distress claim, and we now proceed to determine whether summary judgment was properly granted on that claim.

### III.

#### A.

 In reviewing a summary judgment, we apply the same standard as the district court, *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989), and ask whether the pleadings, depositions, admissions, and answers to interrogatories, together with the affidavits, demonstrate that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). We may affirm a summary judgment on grounds other than those relied upon by the district court when we find in the record an adequate and independent basis for that result. *Degan,* 869 F.2d at 892 (citing *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988)).

#### B.

 The facts underlying Brown's intentional infliction of emotional distress claim are not in dispute. Both parties agree that on September 3, 1987, Bryan and Dendy visited Brown at his home and informed him both that the Benefit Committee had denied his claim and that he would be terminated if he failed to return to work by September 8. Brown does not allege that Bryan and Dendy delivered their message in a threatening or offensive manner; instead, it is his position that Southwestern Bell engaged in "extreme and outrageous conduct" simply by requiring him to choose between ignoring Gordon's advice and losing his job.

The district court reasoned that Brown's emotional distress claim was "specifically relate[d] to denial of benefits" and, accordingly, found it to be preempted by ERISA. *See Light v. Blue Cross & Blue Shield, Inc.,* 790 F.2d 1247, 1248–49 (5th Cir.1986). We need not address the issue of ERISA preemption, however, because we conclude that that claim directly implicates the concerns addressed by another comprehensive federal regulatory scheme—the LMRA.

Although his claim is couched in terms of outrageous conduct and intentional infliction of emotional distress, Brown essentially maintains that Southwestern Bell could not terminate him while he was absent from work pursuant to his doctor's orders.[9] That is to say, Brown asserts that such an absence did not constitute a just cause for discharge under the collective bargaining agreement. Thus, Brown's intentional infliction of emotional distress claim requires interpretation of the collective bargaining

---

9. As Brown states in his brief, "Plaintiffs' claim on the pivotal issue is simple: The defendants forced Richard Brown to choose between his doctor and his job. When Mr. Brown prudently followed his doctor's off-work orders, he lost his

agreement and, like any other purported state-law claim that is in fact "inextricably intertwined with the terms of ... [a] labor contract," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985), is preempted by section 301 of the LMRA.[10]

We reject Brown's suggestion that *Farmer v. United Bhd. of Carpenters & Joiners of Am.*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), precludes a finding of LMRA preemption in this case. *Farmer* does not hold that claims for intentional infliction of emotional distress are never preempted by the federal labor laws, but rather that such claims may escape preemption when they relate only peripherally to federal concerns. In *Farmer*, a carpenter brought suit against his union, claiming both that it had discriminated against him in hiring hall referrals and that it had caused him emotional distress by subjecting him to a "campaign of personal abuse and harrassment." In holding that the plaintiff should be able to proceed to trial on the latter theory, the Court reasoned that abusive conduct unrelated to labor practices is wholly outside the scope of federal preemption.

The Court cautioned, however, that allegedly improper labor practices cannot themselves constitute the "outrageous conduct" necessary to establish the tort of intentional infliction of emotional distress:

Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the

discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

*Id.* at 305, 97 S.Ct. at 1066 (footnote omitted). Just as the allegedly discriminatory hiring hall referrals could not give rise to a claim for intentional infliction of emotional distress in *Farmer*, Brown's discharge cannot give rise to such a claim here.[11] Accordingly, we AFFIRM the judgment of the district court.

---

job, and with it his status, his security, and his place in his family."

10. Section 301, 28 U.S.C. § 185, provides in pertinent part as follows: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." *See also Wells v. General Motors Corp.*, 881 F.2d 166, 172 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990) (interpreting *Allis–Chalmers* as holding that "[w]hen resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between parties to

a labor contract, the claim must be treated as a section 301 claim").

11. We likewise reject the argument that even if Brown's intentional infliction of emotional distress claim is preempted by the LMRA, his wife, who is not a party to the collective bargaining agreement, should be able to assert the same claim. Federal preemption would be completely undermined if an employee's spouse and children were permitted to recover under causes of action unavailable to the employee. Moreover, the record in this case establishes that Karen Brown was not present when Bryan and Dendy visited her husband and informed him that he would be terminated if he failed to return to work.

