WEST, et al.

v.

CONGEMI.

Civil Action No. 98–1654.

United States District Court,
E.D. Louisiana.

Nov. 23, 1998.

Keith R. Credo, Law Offices of Keith R. Credo, Metairie, LA, Frank G. DeSalvo, Harry J. Boyer, Jr., Frank G. DeSalvo, Professional Law corp., New Orleans, LA, for plaintiffs.

Philip J. Boudousque, Law Offices of Philip J. Boudousque, Metairie, LA, Gerald Joseph Nielsen, Susan Annette Weldon, Nielsen Law Firm, Metairie, LA, for defendant.

Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, LA, Michael T. Leibig, Zwerdling, paul, Leibig, Kahn, Thompson & Wolly, Fairfax, VA, for Police Ass'n City of Kenner, Intern. Union of Police Associations, Local 8195, movant.

PORTEOUS, District Judge.

This cause came for hearing on a previous date upon the cross motions for summary judgment by defendants, Nick Congemi and the City of Kenner, and the plaintiffs, Westley West, Dennis Lynch, Robert Polito, Henry Jaume, and Bruce Verrette (hereinafter, "plaintiffs"). Oral argument was entertained by the Court on November 4, 1998.

The Court, having studied the memoranda submitted by the parties and having considered the oral arguments set forth by counsel, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. BACKGROUND

The plaintiffs were each members of the Classified Civil Service of the City of Kenner Police Department. The plaintiffs' activities, at all material times, were subject to the prohibitions contained in La.R.S. 33:2504 (hereinafter, " § 2504") (set forth later). The five plaintiffs were also actively involved in the Police Association City of Kenner (hereinafter, "PACK"). It is disputed as to whether PACK was a union or a non-union association. At all relevant times defendant Nick Congemi was the Chief of Police of the Kenner Police Department.

On or about February 23, 1998, Joseph Stagni, candidate for Councilman–at–Large for the City of Kenner, wrote to PACK and asked for PACK to endorse him. Plaintiffs, who allege themselves to comprise the Executive Board of PACK, contend that they polled PACK's membership after Stagni's request to determine whether PACK should endorse Stagni as a political candidate. The plaintiffs allege further that Chief Congemi communicated his opposition regarding PACK's support of candidate Stagni, allegedly indicating that PACK members should be wary of any political support that they might offer to candidate Stagni. Moreover, plaintiffs maintain that Chief Congemi continually exhibited his animosity towards PACK.

The plaintiffs allege that through PACK they voted to support candidate Stagni after receiving the advice of counsel that they could do so without fear of adverse legal

consequences. After voting to support candidate Stagni, the plaintiffs, through their alleged positions on the Executive Board of PACK, notified Stagni that PACK would endorse his candidacy, and provided Stagni with a monetary contribution of $300.[1] The letter endorsing Stagni was distributed to other Kenner Civil Service employees. Moreover, PACK's endorsement of Stagni was publicly announced by Stagni during his campaign.

After conducting an internal affairs investigation, Chief Congemi terminated the five plaintiffs in June of 1998. The plaintiffs contend that they were terminated solely because of Chief Congemi's hatred of the plaintiffs and their association (PACK).

The defendants note that the Office of the State Examiner made it plainly clear to the plaintiffs, even before they engaged in any political activity, that such activity, engaged in either directly or indirectly, was expressly prohibited by Louisiana state law. These warnings were in the form of direct responses to inquiries by the plaintiffs (including copies of applicable Attorney General Opinions), as well as a newsletter distributed to plaintiffs and instructions posted on bulletin boards located throughout the Kenner Police Department. The defendants contend that these warnings provided actual knowledge to the plaintiffs that any political activity undertaken by them was proscribed by law (and that any violation would result in mandated termination).

The defendants also dispute the procedure followed by the plaintiffs in their acts as alleged executive board members. The defendants claim that the letter of March 3,

1998 indicates that the decision to endorse Stagni had already been made by the individual plaintiffs before any vote by the general membership of PACK.[2] Defendants contend that no vote ever took place. Moreover, the defendants point to a letter written by thirteen members of PACK, who objected to the process followed by the plaintiffs in their decision to have PACK support Stagni.

In April of 1998, Chief Congemi received recommendations and/61or opinions from Gerald Nielsen and Susan Weldon (Congemi's current counsel), and from Philip Boudousque (counsel for Kenner Police Department) indicating that how plaintiffs' political activity should be viewed in light of La.R.S. 33:2504A(4) and 33:2504B.

As indicated by the plaintiff, Chief Congemi commenced a formal internal affairs investigation. During this investigation Congemi tried to obtained documents from plaintiffs' counsel, but was unsuccessful. Moreover, Congemi did obtain advice from a lawyer, Ralph Zatkis, concerning the possible violation of any labor laws. Zatkis informed Congemi that the enforcement of § 2504 would not implicate any labor laws. Congemi also obtained advice from Nielsen and Weldon during the internal affairs investigation to make sure that he did not violate any laws.

Chief Congemi maintains that he followed appropriate pre-termination procedures, including providing written notice to the plaintiffs regarding a pre-termination hearing.[3] The pre-termination hearing was eventually held on June 4, 1998. Defendants contend that at the pre-termination hearing, the

---

1. While the plaintiff's maintain that the only support that they provided Stagni was through PACK, it should be noted that the plaintiffs did personally sign the letter displaying PACK's support of Stagni. Also, defendants contest whether the plaintiffs were actually executive board members of PACK at all, since they failed to follow the appropriate electoral procedures as set forth in PACK's charter (?). Furthermore, with regard to the $300 contribution, the defendants claim that it is undisputed that this donation did not occur as a result of any decision of PACK as an association, but was distributed as a result only of the plaintiffs actions.

2. The defendants assert that votes by the PACK membership were normally done by secret ballot vote. Defendants contend that this was not how the decisions to endorse and contribute money to candidate Stagni were arrived at by PACK.

3. Before the pre-termination hearing could be held, the plaintiffs sought injunctive relief and damages in state court pursuant to 42 U.S.C. § 1983. This state court suit was removed to this federal court by the defendants. On June 4, 1998, this Court declined to issue a TRO, but noted that it would reconsider the issue of a preliminary injunction after Congemi made his final decision as to whether the plaintiffs would actually be terminated.

plaintiffs only provided a copy of the $300 contribution check, a copy of PACK's letter of endorsement to Stagni, and a copy of the certificate of filing of PACK's Articles of Incorporation. On Monday, June 15, 1998, Chief Congemi, citing the mandates of § 2504, terminated the five plaintiffs. The defendants contend that the post-termination process currently being complied with satisfies all concerns of due process. *See* La.R.S. 33:2501 (setting forth Louisiana law regarding the required post-termination procedures in this situation). The hearing with the Kenner Civil Service Board has yet to be completed.

In the conclusion of the defendants' motion for summary judgment, they state as follows:

> Each of the Plaintiffs' terminations were predicated upon four separate violations of La.R.S. 33:2504. If this Honorable Court finds a violation as to the contribution, *or* a violation as to acting as a factional club, *or* agrees that the various letters and campaign materials qualify as a public statement, *or* agrees that any act taken by the Plaintiffs constitutes an act which qualifies as "taking any part" in a political campaign, then, there is no *genuine* dispute of *material* fact, for the statute *has* been violated. In that event, La.R.S. 33:2504B states, "The appointing authority *shall* discharge from the service any employee whom he deems guilty of violating any *one* or more of the provisions of this section." Under this provision, if this Honorable Court agrees that *any* of the four portions of the R.S. 33:2504A(3) or A(4) were violated, Chief Congemi had absolutely no choice. He was under a mandatory and non-discretionary duty tendered to him by the Louisiana Legislature, to uphold this "essential" principal of government.

Doc. # 14.

The plaintiffs oppose the motion of the defendants, and move for summary judgment

themselves, contending that Louisiana law does not mandate that Chief Congemi interfere with the inner workings of PACK's activity.[4] The plaintiffs believe that they were acting as executive board members of PACK, and that it was PACK that endorsed and contributed to Stagni, not them as individuals. The plaintiffs move for summary judgment, claiming that "the heart of the case is a legal question of whether Chief's termination of the Executive Board members for the Union's [ (PACK's) ] political speech violates their Constitutional rights." Doc. # 19.[5] It is very important to note that the Plaintiffs do not claim that the state statute at issue is unconstitutional, but claim that Chief Congemi erroneously enforced it.

## II. *LEGAL ANALYSIS*

### A. *Law on Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir.)) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

---

4. In their motion for summary judgment and in their opposition to defendants' motion for summary judgment, the plaintiffs make claims based on the fact that PACK is a union. That fact is under dispute. Even some of the plaintiffs have indicated in their depositions that PACK was a non-union association.

5. In their memoranda regarding the motions at issue, the plaintiffs most specifically refer to the

interference with their constitutionally protected right of association. The defendants correctly point out that in their complaint the plaintiffs only raised the constitutional claims of denial of "due process" and denial of "equal protection." The defendants assert that there are no claims in plaintiffs' petition that mention freedom of association or freedom of speech.

some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.,* 475 U.S. at 588, 106 S.Ct. 1348. Finally, the court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *42 U.S.C. § 1983 and Qualified Immunity—Individual Official Liability*

■ A determination of whether a public official is entitled to qualified immunity from liability under § 1983 involves essentially a three-step analysis. The first step is to identify the specific constitutional right allegedly infringed. *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811–812, 127 L.Ed.2d 114 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' [citation omitted]. The first step in any such claim is to identify the specific constitutional right allegedly infringed. [citation omitted].") Secondly, the court must determine whether the factual claims of the plaintiff, if proven, actually establish a violation of the said identified and specific constitutional right. *See Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who right-

ly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits."). The third and final step is only taken if step two is resolved in the defendant's favor. *See Samaad v. City of Dallas,* 940 F.2d 925, 940 (5th Cir.1991). If the court determines that the claims of the plaintiff do establish a violation of a specific constitutional right, then the court must ascertain whether the constitutional right asserted by the plaintiff to have been violated by the defendant was "clearly established" at the time the defendant acted. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also Melear v. Spears,* 862 F.2d 1177, 1183 (5th Cir.1989) (The unlawfulness of the act must be apparent in light of preexisting law.).

■ The qualified immunity doctrine attempts to balance society's interest in redressing private injury against the risk of interfering with governmental functions. *See James v. Sadler,* 909 F.2d 834, 838 (5th Cir.1990). Thus, it is the party seeking damages from an official asserting qualified immunity that bears the burden of overcoming that defense. *Hart v. O'Brien,* 127 F.3d 424, 441–442 (5th Cir.1997).

The Court will now examine the claims of the plaintiffs to determine what specific constitutional right has allegedly been infringed, and whether the factual claims of the plaintiff, if proven, actually establish a violation of the said identified and specific constitutional right. In their pleading, the plaintiffs complain of violations of due process, equal protection, and First Amendment rights of association and free speech.[6] The plaintiffs claim that Chief Congemi terminated them under the guise of La.R.S. 33:2504 to further his own interests. Congemi counters that these terminations were mandated by the Louisi-

---

**6.** There is some dispute as to whether the plaintiffs properly plead violations of the right to association and right to free speech. However,

this Court will address those claims since they do not have an effect on this Court's findings.

ana statute, giving him no choice in the matter.

■ At issue is La.R.S. 33:2504. In pertinent part, that statute states as follows:

§ 2504. Political activities prohibited

A. Political activities by and extending to employees of the classified service are hereby prohibited as follows:

(1) No person shall seek or attempt to use any political endorsement in connection with any appointment to a position in the classified service.

(2) No person shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person, or for any consideration.

(3) No employee in the classified service shall, directly or indirectly, pay, or promise to pay, any assessment, subscription, or contribution for any political organization or purpose, or solicit or take part in soliciting any such assessment, subscription, or contribution. No person shall solicit any such assessment, subscription, or contribution of any employee in classified service. The prohibitions of this Sub-section shall not be construed as applying to membership dues paid, or contributions made, to non-political employee organizations, pension funds, civic enterprises, the Louisiana Civil Service League or any similar non-political and non-partisan organization.

(4) No employee in the classified service shall (a) be a member of any national, state, or local committee of a political party, (b) be an officer or member of a committee of any factional, political club or organization, (c) be a candidate for nomination or election to public office, (d) make any political speech or public political statement in behalf of any candidate seeking to be elected to public office, or (e) take any part in the management or affairs of any political party or in the political campaign of any candidate for public office,

except to privately express his opinion and to cast his vote....

B. The appointing authority shall discharge from the service any employee whom he deems guilty of violating any one or more of the provisions of this Section. The board may, upon its own initiative, investigate any officer or employee in the classified service whom it reasonably believes guilty of violating any one or more of the provisions. Any citizen, taxpayer, municipal officer, or employee may file with the board detailed charges in writing against any employee in the classified service for violating any one or more of the provisions of this Section. The board shall, within thirty days after receiving the written charges, hold a public hearing and investigation and determine whether such charges are true and correct. If the board should find upon its investigation of any employee that he has violated any of the foregoing provisions, the board shall order the appointing authority to forthwith discharge the guilty employee from the service and the appointing authority shall forthwith discharge the employee....

If there has been no constitutional violation, then there is no need to address further the doctrine of qualified immunity. *See Siegert,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277.

■ The Court notes that even the plaintiffs have agreed that § 2504 is constitutional. The law is well established that both the states and the federal government can regulate certain political activity of civil servants. *See U.S. Civil Service Commission v. National Association of Letter Carriers AFL–CIO,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (Here, the Supreme Court reaffirmed *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). The Court explicitly stated that a law that "forbade activities such as organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public

office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate or proxy to a political party convention" would be "unquestionably . . . valid." Furthermore, the Court observed that the rights to associate and participate in politics are not absolute and that federal employees' political activities could be constitutionally prohibited); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (This was a companion case to *Letter Carriers.* Here, the challenged provision was a state statute that restricted civil servants' political activities in a manner similar to the Hatch Act. The challenge was based on the contention that the statute's prohibitions were vague and overbroad. The Court disagreed, and held that "at least insofar as it forbids classified employees from: soliciting contributions for political candidates, political parties, or other partisan political purposes; becoming members of national, state, or local committees of political parties, or officers or committee members in partisan political clubs, or candidates for any paid public office; taking part in the management or affairs of any political party's partisan political campaign; serving as delegates or alternates to caucuses or conventions of political parties; addressing or taking an active part in partisan political rallies or meetings; soliciting votes or assisting voters at the polls or helping in a partisan effort to get voters to the polls; participating in the distribution of partisan campaign literature; initiating or circulating partisan nominating petitions; or riding in caravans for any political party or partisan political candidate," the Oklahoma statute was valid.). Furthermore, this Court need only address Louisiana's restrictions on political activity with regards to partisan politics as opposed to non-partisan political activity.[7]

Since there is no dispute here as to the constitutionality of § 2504 itself, the Court must address the issue of whether Chief Congemi constitutionally applied this statute to the plaintiffs. As the Court has indicated,

if Congemi violated no constitutional right, then the plaintiffs can maintain no § 1983 claims against him. The plaintiffs argue that they were merely executive board members of PACK, and that PACK as an association (or union) decided to endorse and contribute to Stagni. The plaintiffs maintain that this activity does not fall under the prohibitions of § 2504. The defendants dispute the fact that the plaintiffs were executive board members of PACK, but submit that whether they were board members or not, the plaintiffs' activities violated § 2504. The activity proscribed by § 2504 is such "direct or indirect" political activity by employees of the classified service. The defendants urge that the political activity undertaken by the plaintiffs did in fact constitute activity proscribed by § 2504.

In *Letter Carriers,* the Supreme Court upheld, among other things, the Hatch Act prohibition on political activity by indirection by certain civil servants. In the appendix to its opinion, the Supreme Court acknowledged the validity of the following legislation:

12. Activity by indirection: Any political activity which is prohibited in the case of an employee acting independently is also prohibited in the case of an employee acting in open or secret cooperation with others. Whatever the employee may not do directly or personally, he may not do indirectly or through an agent, officer, or employee chosen by him or subject to his control. Employees are therefore accountable for political activity by persons other than themselves, including wives or husbands, if, in fact, the employees are thus accomplishing by collusion and indirection what they may not lawfully do directly and openly. Political activity in fact, regardless of the methods or means used by the employee, constitutes the violation. . . .

16. Clubs and organizations: Employees may be members of political clubs, but it is improper for them to be active in organizing such a club, to be officers of the club, or members or officers of any of its com-

---

7. The activity of the plaintiffs were at all times related to the election of candidate Stagni, who was running in a partisan election. This Court would have to employ a different analysis if the

plaintiffs had been cited for engaging in nonpartisan political activity. *See Wachsman v. City of Dallas,* 704 F.2d 160 (5th Cir.1983).

mittees or to act as such, or to address a political club. Service as a delegate from such a club to a league of political clubs is service as an officer or representative of a political club and is prohibited, as is service as a delegate or representative of such a club to or in any other organization. In other words, an employee may become a member of a political club, but may not take an active part in its management or affairs, and may not represent other members or attempt to influence them by his actions or utterances....

*Letter Carriers,* 413 U.S. at 581, 583, 93 S.Ct. at 2898–2899 (citing the United States Civil Service Commission Form 1236, Political Activity and Assessments, September 1939, as inserted into the Congressional Record by Senator Hatch, 86 Cong.Rec. 2938–2940).[8] The language in Section 12 above mirrors that contained in the warning sheet issued by Louisiana's State Examiner and in the opinions of Louisiana's Attorney General. *See* Doc. # 14, p. 9, n. 5. Further case law dealing with our issue of whether the plaintiffs could do indirectly that which they cannot do directly sets is as follows:

One further problem deserves our attention before we address the restrictions on contributions. The district court's invalidation of section 16(b)(1) regarding endorsements presented at nonpolitical gatherings applied only to individual employees, and not to their organizations. The Committee asserts that this ruling ignores its first amendment rights. These rights are derived from the individual members' associational and speech rights ... and from the public's right to free and uninhibited comment on political issues.... Although the district court failed to state why it reached different conclusions regarding Wachsman and the Committee, we perceive an appropriate distinction that justifies its order.

The Committee must act through a spokesman. Regarding individual employees, the court was obviously concerned

with limiting an employee's right to endorse a candidate at a private and/61or nonpolitical gathering (e.g., a Kiwanis Club meeting or a neighborhood barbecue). Such a setting suggests a public employee acting as a private citizen. *This suggestion, however, does not fit a situation in which an official spokesman for an organization of city employees announces in that capacity the organization's endorsement of a particular city council candidate. The latter carries with it all the pernicious possibilities inherent in allowing individual employees to so address political gatherings.* The arrival of an official spokesman bearing such an endorsement largely imbues a gathering with a political flavor. *Indeed, the appellant Committee here is the avowedly political arm of the city employee police and firefighters organizations. Thus, the City's interests in prohibiting endorsements will be present in any situation in which an organization of city employees desires to make an endorsement.* Therefore, the trial court's order in this regard is affirmed.

*Wachsman v. City of Dallas,* 704 F.2d 160, 172–173 (5th Cir.1983) (citations omitted) (footnote omitted) (emphases added). While § 2504 has not been specifically interpreted by the courts, the meaning of that statute should closely follow the interpretations of the statutes in *Letter Carriers, Broadrick,* and *Wachsman.*

■ This Court does not need to determine precisely what "indirect political activity" as mentioned in § 2504 should encompass. This Court need only determine if the actions of the plaintiffs properly fall within the ambits of that section, because if they do, then Chief Congemi was mandated by Louisiana law to terminate the plaintiffs. This Court concludes that the plaintiffs have raised no genuine issue of material fact which would preclude a finding by this Court that their actions did not fall within the proscribed political activity of § 2504. While

8. The court in *Wachsman v. City of Dallas,* 704 F.2d 160, 171 (5th Cir.1983) states that "[v]irtually all the numerous restrictions on federal employee political activity upheld in *Letter Carriers* ... apply as much to strictly state and local

elections and political affairs as to elections for federal office and political activities attendant thereto." *See also Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

394

the plaintiffs do have rights under the United States Constitution, including the rights to equal protection, due process, the right of association, and the right to free speech, the plaintiffs do not have absolute rights to be police officers for the City of Kenner. The provisions of § 2504 proscribe certain political activity undertaken "directly or indirectly." The endorsement of and subsequent monetary contribution to candidate Stagni by PACK, an association (or union) of Kenner police officers, which was controlled by the five plaintiffs in this case, amounted to at least indirect political activity as referenced by the Louisiana statute. As the Court stated earlier, the inquiry here is not whether § 2504 is unconstitutional, but whether Chief Congemi properly applied that unconstitutional statute to the plaintiffs. The Court finds that Chief Congemi did properly comply with the statute.

Even if this Court was to find that Chief Congemi did not properly apply § 2504 in this case, thereby violating certain constitutional rights of the plaintiffs, the Court would still be compelled to find that Chief Congemi is protected by the doctrine of qualified immunity. The final step in a determination of qualified immunity is whether the constitutional right asserted by the plaintiff to have been violated by the defendant was "clearly established" at the time the defendant acted. *See Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738 ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").[9] If the Court were to find that the activity of the plaintiffs was not within the contemplation of § 2504, and that Chief Congemi violated the constitutional rights of the plaintiffs when he terminated them, this Court would still be compelled to find that such constitutional rights (in this

context) were not "clearly established statutory or constitutional rights of which a reasonable person would have known."[10] *Id.* Therefore, the plaintiffs can maintain no claims against Chief Congemi under § 1983. Accordingly, summary judgment is granted in favor of Chief Congemi with regard to the plaintiffs' § 1983 charges.

### C. § 1983 and Municipal Liability

In any case alleging municipal liability under § 1983, the plaintiff must be able to prove a direct causal link between a policy, practice or custom of the municipality being sued, and the alleged constitutional violation. *See City of Canton Ohio v. Harris,* 489 U.S. 378, 384, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). A mere showing of a constitutional violation by a municipal employee is insufficient for municipal liability, for there is no *respondeat superior* liability for § 1983 violations. *Monell v. Dept. Of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prove municipal liability, plaintiff must prove that the municipality was itself the "moving force" behind the constitutional violation by the employee. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). This is because "the touchstone of the § 1983 action against the government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution...." *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036.

However, the Court's analysis as to the liability of the City of Kenner must flow from the finding of this Court above as to the liability of Chief Congemi, where this Court determined that there was no constitutional violation in Chief Congemi's application of the mandates of § 2504. The Fifth Circuit has long recognized that simply following the mandatory dictates of state law cannot form a predicate for *Monell* liability. This point was explained in *Bigford v. Taylor,* 834 F.2d

---

9. The Court notes that § 2504 does not vest discretion with Chief Congemi, but mandates termination of the plaintiffs if they are found to be in violation of the statute.

10. The assertions of the plaintiffs that Chief Congemi had improper motives in his treatment of

the plaintiffs do not affect this Court's analysis here. *See Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (*"Harlow v. Fitzgerald* ... rejected the inquiry into state of mind in favor of a wholly objective standard.").

1213, 1222 (5th Cir.1988), when the Fifth Circuit stated that a county official's "deliberate or mistaken departure from controlling law" cannot be said to represent county policy. *See also Bethesda Lutheran Homes and Svcs. Inc. v. Leean,* 154 F.3d 716, 718–719 (7th Cir.1998) ("But the state of mind of local officials who enforce or comply with state or federal regulations is immaterial to whether the local government is violating the Constitution if the local officials could not act otherwise without violating state or federal law. The spirit, the mindset, the joy or grief of local officials has no consequences for the plaintiffs if these officials have no discretion that they could exercise in the plaintiffs' favor. '[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives.' ") (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)) (other citation omitted).

The Court finds that the plaintiffs have failed to introduce genuine issues of material fact that would lead a fact finder to conclude that the City of Kenner should be held liable under the *Monell* doctrine. Chief Congemi was enforcing a constitutional Louisiana state statute, the terms of which mandate termination in the situation at issue. Once it was found that the actions of the plaintiff fell under the definition of proscribed "direct or indirect" political activity, then the plaintiffs' § 1983 claims against the City of Kenner must necessarily fail. Therefore, summary judgment should be entered in favor of the City of Kenner with regard to the plaintiffs' § 1983 claims.

### D. *The Plaintiffs' State Law Claims*

 Under 28 U.S.C. § 1367(c)(3), when federal law claims that serve as the basis of subject matter jurisdiction are dismissed, and only state law claims based on supplemental jurisdiction remain, a district court has broad discretion to remand the state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction ... if the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also Brown v. Southwestern Bell Telephone Co.,* 901 F.2d 1250, 1254 (5th Cir.1990) ("[T]he decision as to whether to retain the pendent claims is within the sound discretion of the district court.").

The Court, having dismissed the federal law claims of the plaintiffs, hereby declines to exercise supplemental jurisdiction and remands all pending state law claims in this matter back to state court.

Accordingly,

**IT IS ORDERED** that the motion of the defendants, Chief Congemi and the City of Kenner, for summary judgment with regard to the plaintiffs' federal § 1983 claims are **GRANTED.**

**IT IS FURTHER ORDERED** that the motion of the defendants for summary judgment as to all pending state law claims is **DENIED.** The remaining state law claims are **REMANDED** back to Louisiana state court.

**IT IS FURTHER ORDERED** that the plaintiffs' cross motion for summary judgment is **DENIED.**